Eastern District of Kentucky
F I L E D
MAY 3 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 05-218-GWU

EDDIE PRATER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Prater

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Prater

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Eddie Prater, filed his current application for SSI on October 3, 2003, alleging disability commencing August 1, 2000 due to neck and back problems, degenerative disc disease, emphysema, high blood pressure, and gastroesophageal reflux disease. (Tr. 376-7). He had filed a prior SSI application alleging the same onset date and conditions on January 4, 2002 (Tr. 66), which was denied by an Administrative Law Judge (ALJ) on September 23, 2003 (Tr. 340-5). The plaintiff appealed to the U.S. District Court, which affirmed the administrative decision by adopting the Report and Recommendation of U.S. Magistrate Judge Peggy E. Patterson on October 22, 2004. Prater v. Barnhart, Pikeville Civil Action No. 04-1-KKC (E. D. Ky.). The ALJ in the present case declined to reopen the prior application, and, although he found that the plaintiff had "severe" impairments due to a C-5-6 disc bulge and back tenderness and spasm, applied the same residual

Prater

functional capacity finding as had the ALJ in the September, 2003 administrative decision. (Tr. 16, 327).

At the administrative hearing conducted in connection with the plaintiff's present application, the ALJ had asked a vocational expert (VE) whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "light" level exertion, and also had the following non-exertional impairments. He: (1) could stand or walk four hours in an eight-hour day (no more than 30 minutes without interruption); (2) could sit four hours in an eight-hour day (no more than 30 minutes without interruption); (3) could never climb ladders, ropes, or scaffolds; and (5) could occasionally balance, stoop, crouch, kneel, and crawl. (Tr. 644-5). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 646).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff testified that he had stopped working as a county road worker/sanitation worker as a result of arm and shoulder pain, and also continued to have low back pain radiating to his right leg. (Tr. 624, 627, 635). He felt that he could sit for only one to one and ½ hours continuously, sometimes needing help to stand up, and could remain standing 30 to 45 minutes. (Tr. 629-30). He had

8

frequent right hand numbness and tingling, used Prilosec for stomach pain, and became short of breath with extensive walking, or in hot, damp weather. (Tr. 632-3). However, he smoked over one pack of cigarettes per day. (Tr. 641). He was also on medication for hypertension, but stated that this condition and his reflux disease were essentially under control with medication. (Tr. 631, 642).

Much of the evidence submitted by the plaintiff reflects diagnoses and treatment from before the date of the prior administrative decision in September, 2003. Some evidence from before that period which was apparently not submitted with the prior application includes an examination by Dr. Philip Tibbs, a neurosurgeon, on May 22, 2002. (Tr. 454). Dr. Tibbs noted that he had examined the patient previously and recommended a permanent lifting restriction of 25 pounds from the floor and carrying the same amount. (Id.). More recently, the plaintiff had returned complaining of neck pain radiating into his arm and hand, but an EMG/NCV was normal, and the plaintiff reported some benefit from physical therapy. (Id.). Dr. Tibbs recommended a continuation of the same lifting restrictions. (Id.).

The plaintiff submitted evidence of a workup for cardiovascular problems including chest pain and shortness of breath, but test results showed a normal echocardiogram, an essentially normal Holter Monitor, and a normal Cardiolite stress test. (Tr. 462). His cardiologist noted "benign" essential hypertension, which was stable, "tobacco abuse/COPD," and an ejection fraction of 65 percent. (Tr. 463).

9

Prater

He gave the plaintiff medication refills and advised him to stop smoking, but did not list any functional restrictions. (Id.).

The plaintiff had treating physicians who had submitted functional capacity assessments in connection with the prior application limiting the plaintiff to less than full-time work (Tr. 566-7, 610-14), which were found to be not supported by substantial evidence in the prior Court decision.[1] In view of the prior, final decision that these assessments were not supported by substantial evidence, the plaintiff's argument that the ALJ failed to give them proper weight is without merit. None of the new evidence submitted in connection with the present application would suggest otherwise, in any case.

One of the treating physicians who had limited the plaintiff to less than full-time work, Dr. Mark Delomas, a specialist in pain management and anesthesiology, treated the plaintiff on several occasions in late 2003 and and 2004 for chronic lower back pain radiating into the hips and legs. (Tr. 552). His examination in January, 2004 showed that the plaintiff was in no apparent distress, had a supple neck with full cervical range of motion without pain, normal motor strength, equal reflexes, and intact sensation. (Id.). He did find tenderness in the lumbar area and sacroiliac joints, and advised the plaintiff to continue his medications which included Baclofen,

---

[1] See Prater v. Barnhart, supra, Magistrate Judge's Report And Recommendation, p. 15.

<div style="text-align: right">Prater</div>

Celebrex, Neurontin, and oxycodone. (Id.). Further visits occurred in 2004 after the plaintiff strained his back after stepping off the sidewalk, and after breaking a rib by coughing too hard. (Tr. 552-3). These exacerbations appear to be essentially transient. No new functional restrictions are given.

The plaintiff cites MRI reports of his cervical and lumbar spines from 2002 as supporting his allegations of disability. While a cervical spine MRI does show a bulging disc and possible "moderate anterior compression" of the spinal cord (Tr. 491), and a lumbosacral spine MRI shows a congenitally diminutive central spinal canal with bilateral neural foraminal stenosis at L5-S1, there was no definite nerve root compression and no herniated disc (Tr. 579-80). This evidence, in addition to being considered by the previous ALJ, clearly does not meet the Commissioner's Listing of Impairment 1.04, as alleged by the plaintiff on appeal, since there is no evidence of sensory or reflex loss on the recent examinations by Dr. Delomas, a treating source. (E.g., Tr. 552). Nor did the plaintiff supply any evidence of arachnoidotis or pseudoclaudication, which are the other factors which might lead to the Listing being met. Accordingly, this argument is without merit.[2]

The plaintiff extensively argues that the ALJ failed to consider the report of a consultative examiner, Dr. Albert Smolyar. However, this report had been conducted

---

[2] Another lumbosacral spine MRI contained in the transcript, dated March 27, 2002, was clearly conducted on another individual. (Tr. 491).

11

Prater

in April, 2003, and was considered in the prior ALJ's decision. (Tr. 16, 263-70). As the current ALJ was not reopening the prior decision, failing to discuss it was not error.

The only medical interpretation of evidence submitted during the period after the prior administrative decision comes from non-examining state agency reviewers. Dr. H. T. Anzures reviewed the record on November 24, 2003 and concluded that the plaintiff's low back pain was merely a strain and lumbago and had been relieved with Neurontin, his high blood pressure was controlled with no end organ damage, his gastroesophageal reflux disease did not require medication, and there was no medical evidence that his "emphysema" was a problem in the last few years. (Tr. 551). Dr. Anzures concluded that the plaintiff did not even have a "severe" physical impairment. (Id.). Dr. Kenneth S. Phillips reviewed some additional evidence, but concurred with Dr. Anzures that the plaintiff did not have a "severe" impairment on February 4, 2004. (Tr. 586).

The plaintiff further argues on appeal that the ALJ did not properly consider his subjective complaints of pain, but a review of the ALJ's decision showed that he gave a detailed explanation for his conclusions in this area. (Tr. 325-6). The ALJ's rationale meets the standard set out in Duncan v. Commissioner of Social Security, 801 F.2d 847, 852-3 (6th Cir. 1986).

Prater

Finally, the plaintiff argues that the ALJ discriminated against him in finding no mental impairment because he did not see a mental health professional. However, there was no evidence of mental health treatment, no source provided any mental restrictions, and the plaintiff did not even allege a mental impairment in his application for benefits. (TR 376). Therefore, this argument is also without merit.

The decision will be affirmed.

This the ___31___ day of May, 2006.

*signature*

G. WIX UNTHANK
SENIOR JUDGE